UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

| | |
|---|---|
| LARRY TARRER and RAYMOND GARLAND, on behalf of themselves and all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>PIERCE COUNTY, et al.,<br><br>Defendants. | CASE NO. C10-5670BHS<br><br>ORDER DENYING PLAINTIFFS' MOTION FOR CLASS CERTIFICATION AND APPOINTMENT OF CLASS COUNSEL |

This matter comes before the Court on Plaintiffs' motion for class certification and appointment of class counsel (Dkt. 2). The Court has considered the pleadings filed in support of and in opposition to the motion and the remainder of the file and hereby denies the motion for the reasons stated herein.

**I. PROCEDURAL HISTORY**

On September 20, 2010, Plaintiffs filed their motion for class certification and appointment of class counsel. Dkt. 2. By agreement, the parties renoted the motion for class certification for consideration on November 19, 2010. Dkt. 8. On November 18,

ORDER - 1

2010, Defendants responded in opposition to the motion for class certification (Dkt. 20), and on November 19, 2010, Plaintiffs replied (Dkt. 23).[1]

## II. FACTUAL BACKGROUND

This 42 U.S.C. § 1983 and Religious Land Use and Institutionalized Persons Act case arises out of Plaintiffs' challenge to certain policies and practices at the Pierce County Jail in Tacoma, Washington. Dkt. 1 ("Complaint") ¶ 1. Plaintiffs maintain that these policies and practices

> substantially burden Plaintiffs' and other proposed class members' religious exercise by refusing to accommodate religious dietary restrictions, by forbidding group prayer and study, and by prohibiting certain religious clothing and other items that are integral to Islamic faith and worship.

*Id.* For example, Plaintiffs allege that "Defendants have established a preference for non-Muslim inmates at the jail by providing them with opportunities for preferred housing and privileges in a special Christian-based unit known as the "God Pod."' *Id*. Plaintiffs contend that they represent a class made of "all Muslim men incarcerated, now or in the future, at the Pierce County Jail." *Id*. at 2. "Plaintiffs seek declaratory and injunctive relief on behalf of the class they seek to represent, as well as damages individually for the violations of their federal constitutional and statutory rights." *Id*.

## III. DISCUSSION

**A.   Class Certification**

A party seeking to certify a class must demonstrate that it has met all four requirements of Rule 23(a) and at least one of the requirements of Rule 23(b). *Zinser v. Accufix Research Inst., Inc.*, 253 F.3d 1180, 1186 (9th Cir. 2001). In determining whether

---

[1] In its reply brief, Plaintiffs moved the Court to strike the in opposition to the motion for certification on the basis that it was untimely filed. Dkt. 23 at 1. While the response was untimely filed without excuse, the Court declines to reject Defendants brief in opposition on this basis. Plaintiffs could have moved for an extension of time to file their reply, if they needed more time to reply.

ORDER - 2

certification of the putative class is appropriate, the Court does not look to the merits of the claim except to the extent that the facts pertaining to the merits overlap with the requirements of Rules 23(a) and 23(b). *See, e.g., Dukes v. Wal-Mart Stores, Inc.*, 603 F.3d 571, 589 (discussing the appropriate inquiry in determining whether to certify a class under Fed. R. Civ. P. 23). The *Dukes* court clarified that a district court is not required to take each allegation as true when determining whether the putative class can establish each requirement set out in Rule 23(a). *Id*. at 598.

**1. Rule 23(a)**

Rule 23(a) allows a class to be certified

> only if (1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interests of the class.

Fed. R. Civ. P. 23(a). In short, the class must satisfy the requirements of numerosity, commonality, typicality, and adequacy.

Rule 23(b) provides for three types of class actions. Fed. R. Civ. P. 23(b). Here Plaintiffs seek to certify the class under Rule 23(b)(2)

**a.   Numerosity of Class**

First, Rule 23(a) allows a class to be certified only if the "the class is so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1). The putative class consists of Muslim men who are committed to the Pierce County Jail and those Muslim men who may become incarcerated in the future. It is undisputed that the putative class satisfies the numerosity requirement.[2]

Based on the foregoing, the Court concludes that numerosity is established.

---

[2] Defendants do not challenge whether numerosity is established in this case.

ORDER - 3

### b. Commonality of Claims

To establish commonality, the Plaintiffs must establish the presence of "questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2). It is well-established that "all questions of fact and law need not be common to satisfy the rule. The existence of shared legal issues with divergent factual predicates is sufficient, as is a common core of salient facts coupled with disparate legal remedies within the class." *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1019 (9th Cir. 1998); *see also Parra v. Bashas', Inc.*, 536 F.3d 975, 978 (9th Cir. 2008). Furthermore, "[t]he commonality test is qualitative rather than quantitative – one significant issue common to the class may be sufficient to warrant certification." *Dukes*, 474 F.3d at 1225 (9th Cir. 2007); *accord Blackie v. Barrack*, 524 F.2d 891, 904 (9th Cir. 1975) (requiring "a" common issue of law or fact).

In a civil rights suit, commonality is generally satisfied where the lawsuit challenges a system-wide practice or policy that affects all of the putative class members. *See LaDuke v. Nelson*, 762 F.2d 1318, 1332 (9th Cir. 1985); *see also* 5 James Wm. Moore et al., *Moore's Federal Practice* ¶ 23.23[5][f] (3d ed. 1999) (citing *LaDuke*). In such circumstance, individual factual differences among the individual litigants or groups of litigants will not necessarily preclude a finding of commonality. *See Baby Neal for and by Kanter v. Casey*, 43 F.3d 48, 56 (3rd Cir. 1994).

Additionally, in instances where plaintiffs maintain individual damages claims, commonality will not be defeated provided such claims are premised on the same system-wide policies complained of by the putative class. *See Probe v. Teachers' Retirement System*, 780 F.2d 776, 780 (9th Cir. 1986) (noting "that actions involving both individual and class claims are not uncommon (citing, *e.g., Marshall v. Kirkland*, 602 F.2d 1282 (8th Cir. 1979); *EEOC v. General Telephone Co.*, 599 F.2d 322 (9th Cir. 1979), *aff'd* 446 U.S. 318 (1980)). Although Plaintiffs request individual money damages in this suit, such a claim is merely incidental to their primary claims regarding the alleged religious

discriminatory practices of the Pierce County Jail. Thus, Plaintiffs' request for money damages does not prevent class certification under Rule 23(b)(2).

Other than Defendants' money damages argument, they generally argue as follows regarding commonality:

> Plaintiffs have failed to present any evidence that [there] are any other inmates who have requested the special treatment Plaintiffs are seeking. There is no indication that anyone other than Plaintiffs has complained about similar issues, . . . and simply alleging that there will be more Muslims in jail in the future does not create a common issue of Law or fact.

Dkt. 20 at 4 (citations omitted).

In contrast, Plaintiffs argue that commonality is present because Plaintiffs are challenging uniform policies applicable to Muslim male inmates, and the resolution of their claims will depend on the same legal theories. Specifically, Plaintiffs' complaint identifies, among other things, the following common claims in relation to the policies at the Pierce County Jail:

> 36. Defendants Pierce County and PCSD have an official policy or custom prohibiting inmates from wearing headwear, regardless of the religious significance of such headwear. Under this policy, Plaintiffs are not permitted to wear a kufi.
>
> 37. Plaintiffs subscribe to Islamic dress restrictions that prohibit Muslim men from wearing pants with hems that fall below the ankles. Defendants' policies and customs pertaining to inmate clothing prevent Plaintiffs from complying with this restriction.
>
> 38. As a result of Pierce County and PCSD policy or custom, Muslim inmates, including the Plaintiffs, are denied access to various items used for religious worship, including Islamic prayer rugs, prayer beads, prayer oil, and miswaks (small, soft, teeth-cleaning instruments, used before religious practice). Defendants' refusal to allow Muslim inmates to possess these articles substantially burdens Plaintiffs' religious exercise.
>
> 39. As a result of the policies or customs of Defendants Pierce County and PCSD, Muslim inmates, including the Plaintiffs, have been and are denied meaningful opportunities for congregate prayer and religious study, integral to Islamic practice, while non-Muslim inmates enjoy such opportunities on a regular basis.

ORDER - 5

Complaint ¶¶ 36-39. Several of the foregoing issues are corroborated by exhibits containing copies of the named Plaintiffs' grievance kites to and the responses from the Pierce County Jail staff. *See, e.g.,* Second Declaration of Rose Spidell ("2nd Spidell Decl.," Dkt. 24), Ex. C at 1-3 (complaining about adequacy of available items for a Muslim man's religious needs).

In direct response to Defendants' claims that Plaintiffs have not identified other Muslim men inmates who have similarly been denied their requested religious accommodations, Plaintiffs identify documents from Defendants' own records that undermines the accuracy of such an assertion. *See* 2nd Spidell Decl., Ex. D, E. (copies of grievance kites of two separate Muslim men inmates at Pierce County Jail that are not the named Plaintiffs, complaining of denial of access to items for Muslim religious needs; Defendants responded to the kites and denied the requests citing to jail policies).

The Court is satisfied that, based on the foregoing allegations and the supporting documents, Plaintiffs have sufficiently established that common questions of law and fact exist among the putative class. Indeed, the record supports the conclusion that the Pierce County Jail has a system-wide policy in place that has a potentially discriminatory affect on Muslim males who are inmates of the facility. *See Dukes*, 603 F.3d at 599 (upholding a finding of commonality where, among other things, a common system-wide policy was in place that could be found to be discriminatory). Therefore, commonality is satisfied.

        **c.**    **Typicality of Claims**

Named representative plaintiffs must also establish that their claims are typical of the class proposed in order to satisfy the typicality requiremnt in Fed. R. Civ. P. 23(a)(3): Plaintiffs must establish that "the claims or defenses of the representative parties are typical of the claims or defenses of the class." The typicality requirement serves the purpose of assuring "that the interest of the named representative aligns with the interests of the class." *Hanon v. Dataproducts Corp.*, 976 F.2d 497, 508 (9th Cir. 1992).

"Although the 'commonality and typicality requirements of Rule 23(a) tend to merge,' each factor serves a discrete purpose. Commonality examines the relationship of facts and legal issues common to class members, while typicality focuses on the relationship of facts and issues between the class and its representatives." *Dukes*, 603 F.3d at 612 (citations omitted). In *Dukes*, the Ninth Circuit upheld precedent finding typicality satisfied where claims or defenses are "reasonably coextensive with those of absent class members; they need not be substantially identical." 603 F.3d at 613 (quoting *Hanlon*, 150 F.3d at 1020). The *Dukes* court further explained that a court must consider "whether the injury allegedly suffered by the named plaintiffs and the rest of the class resulted from the same allegedly discriminatory practice."

Here, the claims or defenses are sufficiently typical between the representative parties and that which would be typical of the class. As evidenced by the complaint and the grievance kites (from representative and non-representative class members), the claims are typical of the class due to these being limited to Muslim men in the Pierce County Jail and that the denial of the requests are for that which a Muslim man is alleged to need for his religious practice. However, this part of the typicality inquiry does not appear to be the focus of Defendants' stated position that the class should not be certified.

Instead, the Defendants take issue with the relationship between the representatives and the members of the class they represent. *See Falcon*, 457 U.S. at 156 (requiring the representatives to be members of the class they represent). Defendants argue that while the same policies may be in place for all Muslim men, the representatives in this case are violent offenders subject to heightened security, which Defendants argue is different than those who would be in the class. Stated differently, Defendants argue that

the named representatives comprise a subclass within the larger class – violent offenders who are Muslim male inmates in Pierce County Jail.[3]

To support this contention, Defendants rely on a line of cases declining to find typicality where a "putative class representative is subject to unique defenses which threaten to become the focus of the litigation." *Hanon*, 976 F.2d at 508 (collecting cases). Defendants argue that the security restrictions for the Plaintiffs' representatives required them to be in individual cells, rather than an open pod, and that they have fewer privileges than the typical inmate. *See* Declaration of Patrick Kelly (Kelly Decl.) at 2-3 (describing the violent offender classifications for both representative Plaintiffs).

Plaintiffs contend, however, that *Hanon* is distinguishable on its facts. In *Hanon*, the representative plaintiff had a "unique background and factual situation that require[d] him to prepare to meet defenses that [were] not typical of the defenses" that other class members might raise. 976 F.2d at 508 (holding that representative plaintiff had too much experience with securities to be able to assert the same defenses credibly as might be available to the rest of the class of other stockholders); *but see Koos v. First Nat. Bank of Peoria*, 496 F.2d 1162 (7th Cir. 1974) (holding that unique defense applicable to representatives prevented a finding of typicality).

In *Koos*, the Seventh Circuit considered the "unique defense" problem that can stand in the way of obtaining class certification. 496 F.2d at 1164-65. In *Koos*, the Court noted that "[w]here it is predictable that a major focus of the litigation will be on an arguable defense unique to the named plaintiff or a small subclass, then the named plaintiff is not a proper class representative." *Id*. The *Koos* court held as follows:

---

[3]Defendants also argue that Plaintiffs have not alleged that inmates without such classification exist in the class. It is unclear whether this argument is valid. The Kelly Declaration only addresses the offender status of the two representatives, while the record contains grievance kites from inmates that may or may not be violent offenders. Nonetheless, the Court does not find typicality present for other reasons and need not address this issue.

ORDER - 8

> Had this case proceeded as a class action, much of the Kooses' efforts would have necessarily been devoted to their own problems . . .; this may well have resulted in less attention to the issue which would be controlling for the rest of the class. A representative plaintiff should not be permitted to impose such a disadvantage on the class.

*Id*. at 1165 (citations omitted). The court went on to state that "[t]o the extent there are significant issues affecting only part of the class, the named representatives should be in the larger part of the class[,]" not a subclass.

The Court adopts and now applies the reasoning of the Seventh Circuit on this issue. Here, the representative Plaintiffs are both violent offenders. *See* Kelly Decl. at 2-3. Because of the undisputed fact that violent offenders are subject to heightened security measures at the Pierce County Jail, these representatives may have greater hurdles to overcome in proving the merits of their discrimination claims than Muslim men who are not considered violent offenders (i.e., those subject to lower security measures and permitted more freedoms in the Pierce County Jail). It is predictable that this difference may become the focus of litigation, which would be a distraction and have potentially unintended consequences for the non-violent offenders in the class.

Based on the foregoing, the Court does not find the requirement of typicality satisfied, which prevents class certification. *See, e.g.,* Fed. R. Civ. P. 23(a)(3).

### d. Adequacy of Representation

"A certified class must be 'fairly and adequately protect[ed]' by adequate counsel." Fed. R. Civ. P. 23(a)(4). The Ninth Circuit requires adequate representation by both counsel and named plaintiffs:

> To satisfy constitutional due process concerns, absent class members must be afforded adequate representation before entry of a judgment which binds them. *See Hansberry v. Lee*, 311 U.S. 32 (1940). Resolution of two questions determines legal adequacy: (1) do the named plaintiffs and their counsel have any conflicts of interest with other class members and (2) will the named plaintiffs and their counsel prosecute the action vigorously on behalf of the class? *See Lerwill v. Inflight Motion Pictures, Inc.*, 582 F.2d 507, 512 (9th Cir. 1978).

ORDER - 9

*Hanlon*, 150 F.3d at 1020.[4]

Because of the unique issues presented by the named Plaintiffs' offender status, the Court also finds conflict of interest between the representatives and the other class members who are not violent offenders. Therefore, adequacy of representation is also not established, which prevents certification.

### e.   Conclusion

Because the putative class, as currently represented, cannot establish each of the requirements necessary for class certification under Rule 23(a), the Court denies the motion for class certification.

### 2.   Rule 23(b)

Because the Court is not certifying the class under Rule 23(a), the Court cannot reach application of Rule 23(b): "A class action may be maintained if Rule 23(a) *is satisfied* . . . ." Fed. R. Civ. P. 23(b).

## B.   Appointment of Counsel

Because the Court is not certifying the class, see above, the Court need not appoint the currently named counsel or any counsel to serve as class counsel. However, the Court notes that plaintiffs' counsel's qualifications have not been called into question by Defendants or this Court.

---

[4]Defendants argue that the class is not adequately represented because Garland, a named Plaintiff, was already transferred from the Pierce County Jail at the time of filing this motion. However, where, as here, the class is transitory, that is, in the custody of a government agency (e.g., jail inmates), the fact of future transfer is insufficient to defeat a claim of adequate representation. *Stewart v. Winter*, 669 F.2d 328, 333-34 (5th Cir. 1982). Under Defendants' interpretation, a jail inmate (transitory by nature) would never or rarely be capable of representing a class of other transitory jail inmates. While the Court finds this factor left unsatisfied for other reasons, it follows other courts in rejecting this argument.

ORDER - 10

## IV. ORDER

Therefore, it is hereby **ORDERED** that Plaintiffs' motion for class certification and appointment of counsel is **DENIED without prejudice** for the reasons discussed herein.

DATED this 21st day of December, 2010.

BENJAMIN H. SETTLE
United States District Judge

ORDER - 11